**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

MICHAEL JONES, #420-162       *
a/k/a Sincere Allah               *
                                *
                                *
                                *
v.                                 *       Civil Action No.  CCB-16-2893
                                *
WARDEN FRANK BISHOP, et al.    *
                                *
                                *

               *********

## MEMORANDUM

Plaintiff Michael Jones, a/k/a Sincere Allah[1] is incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He raises in this verified complaint claims of excessive force, unconditional conditions of confinement, inadequate mental and medical care, retaliation, and unequal treatment pursuant to 42 U.S.C. §1983.  Compl., ECF No. 4.  He is requesting injunctive relief and monetary damages. *Id.*

In response, Defendants April Shipley, LPN, William Bilak, R.N., and Vicki Ward, LPN (collectively, "Medical Defendants") filed a Motion for Summary Judgment. ECF No. 34. Defendants Warden Frank Bishop, Chief of Security William S. Bohrer, Major Ronald Stotler, Lieutenant Michael Oates, Lieutenant Bradley Wilt, Lieutenant Patrick Speir, Lieutenant  Robert Werner, Lieutenant Thomas Sawyers, Sergeant Charles Bielanski, Sergeant Adam Schroyer, Correctional Officer Timothy Marchinke, Correctional Officer Shawn Murray, Correctional Officer Brandon Self, Correctional Officer Warren Mallow, Correctional Officer Cody Gilpin,

---

[1] Jones states that he legally changed his name to Sincere Allah, but indicates that he may not use this name when he files requests under the Administrative Remedy Procedure ("ARP") process.  Compl., at 2.  The court will refer to plaintiff by the last name Allah.  In other cases he filed in this court, Jones identified as a transgender female.  *See e.g. Jones v. Director John Doe, et al.*, GLR-15-3065 (providing name as Michael Jones a/k/a Latrina Marie Lopez); Ex. 2, Pertinent Med. Records at 5, ECF No. 6-2.  Here, plaintiff refers to himself using male pronouns in the majority of his pleadings, and so will the court, although plaintiff self-refers as "Ms. Jones" in his opposition.  ECF No 49.

Correctional Officer H. Michael, Correctional Officer Justin Weimer, Correctional Officer Justin Sellers, Mental Health Professional Counselor Laura Wilson, and Psychology Associate I Lauren Beitzel (collectively, the "State Defendants") filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 38. Defendants Vincent Siracusano, M.D., and Jeanette Simmons filed separate motions to dismiss. ECF Nos. 36, 47. [2]

The Clerk sent notice to the plaintiff informing him that he may respond to the motions and submit affidavits and exhibits in support and granted his motions for extension of time to file oppositions. ECF Nos. 35, 37, 39, 40, 48. The plaintiff filed a response in opposition. ECF No. 49. The plaintiff also filed a notice for voluntary dismissal on March 27, 2018. ECF No. 53.

## BACKGROUND

A Maryland inmate, who asked not to be publicly identified for fear of retaliation, sent correspondence to the court alleging that Sincere Allah was subjected to retaliation by officers and medical staff for throwing feces at a correctional officer, was off his medication and suffering psychotic episodes and suicidal ideations, and was not receiving medical and mental health care. ECF No. 1. The court directed the Department of Public Safety and Correctional Services ("DPSCS") to file a report on the plaintiff's physical and mental condition within twenty-one days. ECF No. 2. The court directed the Clerk to send a civil rights complaint form and instructions packet to Sincere Allah should he wish to pursue these or other claims. *Id.*

On September 9, 2016, the Attorney General's Office filed the court-ordered report on the plaintiff's physical and mental condition, which included the declaration of Monica A. Wilson, a DPSCS social worker, and 22 pages of the plaintiff's medical records. ECF Nos. 6, 6-1, 6-2. Wilson's declaration stated that over the course of the past six months, Wilson had met

---

[2]  The docket shall be revised to reflect the correct spelling of the names of the following defendants as shown in their dispositive motions and declarations: Jeanette Simmons, ECF No. 47, Patrick Spier, Warren Mallow, H. Michael, and Justin Weimer. ECF No. 38.

with the plaintiff for seven individual sessions. Psychology staff met with him five times in the same time period. ECF No. 6-1 ¶ 3. The plaintiff was seen several times for suicidal ideations and self-harm, including cutting himself with his fingernails and paint chips. The plaintiff, however, denied feeling suicidal, indicated his desire to return to his cell, and told medical providers he had wanted attention and to "get back at staff." *Id.* His cuts were treated with band aids. *Id.*

### THE PLAINTIFF'S CLAIMS

On September 8, 2016, the plaintiff filed a 31-page handwritten complaint titled "Supplement to the Complaint" which he submitted in the form of an affidavit. ECF No. 4. The court treats this filing as the plaintiff's complaint. The plaintiff also filed twenty-four pages of exhibits and a declaration. Pl.'s Attachments, ECF Nos. 4-1, 4-2.

The gravamen of the complaint is that correctional officers and medical staff deprived the plaintiff of mental health and medical care, including prescription medication, and subjected him to unconstitutional conditions of confinement in retaliation for his assault on a correctional officer on August 5, 2016. Compl.; *see also* Serious Incident Report, State Def. Ex. 18, ECF No. 38-20. The plaintiff admits that he had flooded his tier on August 3, 2016 and assaulted an officer by spraying urine on him. Compl. ¶¶ 46, 49. He blames these actions, however, on lack of adequate medical and mental health care, including the discontinuation of his psychotropic medications. *Id.* ¶ 42.[3] He states that he was taken off "all his medication, because they stated that he was caught on tape passing his medication to another inmate which was a mendacious

---

[3] Plaintiff does not allege who discontinued his medication, when the medication was discontinued or suggest the medication was discontinued with deliberate indifference to his serious medical or mental health needs. The court notes that he asks for injunctive relief to stop Laura Wilson, Lauren Beitzel, and Vincent Siracusano from denying medication for his mental conditions, although he alleges no facts supporting that they specifically denied him medication Compl. ¶ 108.

statement and a form of retaliation." *Id.* ¶ 43.    Further, he alleges: 1) correctional staff tamper with his mail; 2) correctional officers refuse to accept his Inmate Grievance Office ("IGO") forms for mailing; 3) he is not receiving treatment for severe pain in his neck, back, stomach, and headaches and spitting up blood and "green stuff"; 4) he is receiving inadequate medical treatment; 5) mental health provider Lauren A. Beitzel "lies for the correctional officers" and refuses his requests to see a psychologist; and 6) Officer Murray refused him an emergency pass to see the dentist on August 1, 2016, which caused him to suffer extreme pain, lose "control," and flood the tier on August 3, 2016.  Compl. ¶¶ 39-42, 45-47, 67-68.

### August 3, 2016

The plaintiff explains that on August 3, 2016, he asked Officer Murray if he had an institutional pass.  Murray replied in the negative, and stated "even if you did you won't be go [sic], now you can write me up for that to[o]." Compl. ¶¶ 44-45. The plaintiff flooded the tier, claiming his loss of "complete control" resulted because Officer Murray denied him a pass to see the dentist, and Officer Marchinke refused to speak to him about Murray's refusal.  *Id.* ¶ 46.

### August 5, 2016 Incident[4]

The plaintiff alleges Officer Self gave him a bag lunch instead of a hot lunch and threatened to "spray" him and called him a "dead nigger."  *Id.* ¶ 48. About twenty minutes later, the plaintiff admits that he "sprayed [Officer Self] down with piss." *Id.* ¶ 49.   An hour later, Lieutenant Spiers ordered plaintiff to cuff-up and exit the cell.  The plaintiff initially refused, then agreed before the cell extraction team arrived. Officer Spiers told the plaintiff that it was "to[o] late for that" and walked away.  *Id.* ¶ 50.

---

[4] Although the Complaint seems to indicate that these events occurred on the same day the plaintiff flooded the tier, the Serious Incident Report filed as a defense exhibit indicates that it occurred on August 5, 2016. Ex. 18, Serious Incident Report.

About thirty minutes later, Lieutenant Bradley Wilt, accompanied by Officer Marchinke, Sergeant Werner, and approximately six other officers, ordered the plaintiff to the cell door slot to be handcuffed. Once the plaintiff was handcuffed, the cell door opened, and Wilt grabbed the plaintiff by the neck and "for no reason" forcefully pushed his head toward the floor. *Id.* ¶ 51-52. Officer Marchinke and one other officer bent plaintiff's arms until his shoulders popped and started to pull him down the hall. Wilt ordered the officers to pull him so as to dislocate his shoulders. *Id.* Plaintiff was put in a strip cage and searched. *Id.* ¶ 53.[5]

"Nurse Amy" then evaluated plaintiff for his complaints of excruciating neck, back, and shoulder pain. Plaintiff told her that he could not breathe, and asked for his inhaler. "Nurse Amy" replied "to [sic] bad nigger, you should have not assaulted an officer," and turned to the camera to state that the plaintiff was fine. *Id.* ¶ 53. Wilt placed a spit mask on the plaintiff, even though the plaintiff claims that he could not breathe, and directed Officer Murray to store his property. At Wilt's direction Marchinke and another officer dragged the plaintiff to his cell with his hands above his head. He was placed back in a cell without running water, toilet paper, a mattress, or his personal property. *Id.* ¶¶ 54-56.

The plaintiff asserts that he declared a hunger strike on August 5, 2016, because he was given a "meal loaf." He claims meal loaf is unconstitutional. He posits that he was the only inmate on the segregation tier provided meal loaf, and that two white inmates who threw urine on an officer did not face the same repercussions. The plaintiff asserts that one of the white inmates was not placed on meal loaf or denied running water in their cell, and that the other was

---

[5] A serious incident report was written after the assault on Officer Self. Ex. 18, Serious Incident Report. The report states that Lt. Sawyers and a trained negotiator, Officer Franz, were able to persuade plaintiff to exit the cell. The report does not reference any use of force. *Id.* The incident was recorded on camera, but the recording is not part of the record.

placed on staff alert,[6] but not deprived of his property. *Id.* ¶ 60. According to Defendants, the plaintiff was placed on a special management meal (also called meal loaf) for seven days and a container restriction. Status Report Ex. 2, Pertinent Med. Records at 7; State Def. Ex. 21, Daily Events Log, Aug. 5, 2016 at 1, ECF No. 38-23. Defendants also claim that the plaintiff refused a mattress. State Def. Ex. 21, Daily Events Log, Aug. 5, 2016 at 1.

The plaintiff remained on staff alert from August 5, 2016 to August 18, 2016. Ex. 23, Record of Segregation Confinement at 6, ECF No. 38-25; State Def. Ex. 19, Staff Alert Designation, ECF No. 38-21 (noting the plaintiff's continuing disruptive behaviors toward staff); State Def. Ex. 21, Daily Events Log, Aug. 5, 2016. On the evening of August 5, 2016, Nurse Kelly Fincham examined the plaintiff for a one-inch laceration on his right wrist. State Def. Ex. 5, Relevant Med. Records at 6, ECF No. 38-5. There was no bleeding or swelling, and the laceration appeared to be healing. Fincham cleaned the cut, applied an antibiotic ointment and covered it with a bandage. *Id.* The plaintiff refused to explain how he received the laceration. *Id.*

Based on the August 5, 2016, incident, the plaintiff was charged with and later found guilty of violating prison rules 101 (assault or battery on staff), 105 (possession, use, or manufacture of a weapon), 312 (interfering with or resisting performance of staff duties including search of a person, or area), and 405 (demonstrating disrespect or use of vulgar language). Sanctions, including disciplinary segregation, were imposed. State Def. Ex. 20, Inmate Hearing Record at 2, 14, 16, ECF No. 38-22.

---

[6] Staff alert is a temporary designation used to notify correctional staff that an inmate poses a threat to security or may harm staff or other inmates. Mem. Supp. Mot. Dismiss at 7 n.1, ECF No. 38-1; *see also* Ex. 21, NBCI.ID.110.0006.1, Disciplinary Segregation at 12-17, ECF No. 38-24.

**August 8, 2016 Incident**

On August 8, 2016, Officer Murray ordered the plaintiff to leave his cell for a "bar check."[7] Compl. ¶ 61. The plaintiff refused unless staff alert protocol was followed to include recording his exit in the presence of another officer and a sergeant. *Id.* After Officer Durst, Sergeant Werner, Lieutenant Wilt, Officer Beechy[8] and five other unnamed officers arrived, the plaintiff agreed to leave his cell. After the plaintiff was handcuffed, Lt. Wilt allegedly grabbed him by his neck and forced his head down to the floor. Wilt stated "mother fuck your [sic] not going to spit on me." *Id.* ¶ 62. The plaintiff alleges Wilt accused him of spitting to justify the assault. Wilt told officers that the plaintiff has asthma and to put him in a cell where the windows were locked so that the heat will kill him. *Id.* The plaintiff was escorted to another cell, where Wilt, knowing that the plaintiff suffered jaw problems, stuck his thumb and finger into the plaintiff's jaw three or four times, causing him extreme pain. *Id.* ¶ 63. An unidentified correctional officer put his knee on the plaintiff's throat and started closing the cell door, while pulling the tether attached to his handcuffs. The plaintiff alleges they tried to pull him up by his hands and shoulders for no reason. Officers pulled his arms out of the food slot in the cell door and pushed down on his wrists and pulled his handcuffs, which was painful and cut the plaintiff's wrists. The plaintiff claims he was then denied medical treatment. *Id.*

After the plaintiff left his cell, officers searched it and found a hidden milk carton, which was contraband because he was on a container restriction for his earlier assault on Officer Self. State Def. Ex. 20, Inmate Hearing Record at 11. He was charged with and, after a formal hearing, found guilty of violating institutional rules 312 (interference or resistance to staff duties), 400 (disobeying an order) and 406 (possession of contraband). *Id.* Ultimately, the

---

[7] The parties do not explain the purpose or nature of a bar check.
[8] Plaintiff does not name Beechy or Durst as defendants.

plaintiff was found guilty of violating Rule 101, 105, 312, and 405 based on the August 5 and August 8th incidents. *Id.* at 9, 16-17, and a hearing officer sentenced him to a total of 180 days of disciplinary segregation. *Id.* at 2.

**Mental and Medical Health**

The plaintiff claims that he suffers posttraumatic stress disorder, episodic mood disorder, and anti-social personality disorder, and was prescribed psychotropic medication. He states that at one time he was prescribed 50mg sertraline, 2 mg. prazosin, and 300 mg of lithium carb, and then his medications were changed to .5 mg. risperidone, 2 mg. prazosin, and diphenhydramine 25 mg, and then his medications were changed again to 37.5 mg of Effexor, 2 mg. of Erhenazine, and 25 mg of diphenhydramine. Compl. ¶ 42. Notably, he does not indicate when these changes occurred. The plaintiff claims that he cut his wrist on August 5, 2016, due to psychological and physical pain. *Id.* ¶57.

The plaintiff claims he attempted suicide again on August 8, 2016. *Id.* ¶ 64; Status Report Ex. 2, Pertinent Med. Records at 4 (record completed by Lauren Beitzel, LCPC). Lt. Oates escorted him to the medical unit where he was examined by Nurse Dawn Hawk. Compl. ¶ 64; Status Report Ex. 2, Pertinent Med. Records at 5. The plaintiff informed Hawk that he cut his arm because he was not getting transgender treatment. Status Report Ex. 2, Pertinent Med. Records at 5. The laceration, approximately three inches, showed no signs of infection, and was cleaned. *Id.* Hawk applied Bacitracin and a sterile dressing. *Id.* That evening correctional staff contacted the psychology department. *Id.*

Lt. Oates informed the plaintiff that Laura Wilson said he was faking suicide to seek attention, and escorted him back to his cell. The plaintiff asked to see Lauren Bietzel and requested his stomach medication and inhalers. Compl. ¶¶ 64-66. Oates replied he would contact

Bietzel, but the plaintiff was not permitted anything, including water or a mattress, while on staff alert, per the directions of Chief of Security Bohrer, Warden Bishop, Thomas Sawyers, Major Stotler, and Lieutenant Wilt. *Id.* ¶ 65.

The plaintiff claims he was left on staff alert for 16 days without his personal property, a mattress, water, toilet paper, or his asthma and stomach medication. *Id.* ¶¶ 67-68. The record shows, however, that he was on staff alert on August 5, to August 18, 2016, a total of 13 days. State Def. Ex. 23, Record of Segregation Confinement at 6; State Def. Ex. 19, Staff Alert Designation Notice, ECF No. 38-21. The plaintiff claims that when he asked Nurses Ciara, Kelly, William Bilak, Shawna, April, Jane Shipley, and Vicki Ward for his inhalers and for pain medication during this time, they smiled and walked away. Compl. ¶ 68. He also asked correctional staff members Werner, Bielanski, Wilt, Spears, Marchinke, Murry, Self, Warren, Gilpin, Michael, Weismer, Crowe, and Sellers for his medication, but they refused him because he had assaulted an officer. *Id.* at 21 ¶ 68.

The plaintiff seeks preliminary and permanent injunction to stop correctional officers from denying him showers, recreation, haircuts, welfare hygiene bags, institutional passes, and the opportunity to wash his clothing. Compl. ¶ 108. He asks for injunctive relief to stop Laura Wilson, Lauren Beitzel, and Vincent Siracusano from denying him treatment and medication for his mental conditions. *Id.* He asks for Nurses Ciara, Amy, and Kelly; William Bilak; April Shipley; and Vicky Ward to reorder his pain medication when it is running low and to stop denying him sick passes. *Id.* The plaintiff also seeks $200,000 against each defendant, jointly and severally, and punitive damages of $350,000 against each defendant. *Id.* ¶¶109-110. In a separate declaration, he alleges that he faces a constant threat of serious mental and physical harm because he suffers severe gastritis, experiences pain with defecation, and has blood in his

feces. He also claims Defendants deny him his blood pressure medication and tamper with his mail. *See generally* ECF 4-2.

The plaintiff filed a Motion for Leave to File an Amended Complaint which was granted. ECF Nos. 17, 18. The plaintiff did not subsequently file an Amended Complaint. However, his Motion for Leave to File an Amended Complaint demonstrates his intent to name Bruce Liller, Krista Bilak, RPN, and Dr. Ashraf Mahboob as additional defendants. Mot. Leave to File at 1. The plaintiff claims Krista Bilak and Dr. Mahboob refused to order treatment and denied him medication. *Id.* ¶ 33-34. He claims Bruce Liller as a program manager failed to provide him with "appropriate and adequate mental health programming" and has denied him the "right to be evaluated for the SMI (severely mentally ill) or SNU (special needs unit)." *Id.* ¶ 17. The plaintiff seems to attribute his assault on Officer Self to cessation of his medication, unconstitutional meals, lack of medical care, and special cell placement. *Id*. ¶ 6. The motion to amend, if intended by the plaintiff to be an amended complaint, is unverified. *See generally*, Mot. Leave to File. Because the plaintiff's medical claim will proceed, he may seek leave to file an amendment to his complaint to add these individuals as defendants, setting forth his reasons why they have violated his constitutional rights.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011); *see Hall v. DirectTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Where, as here, the plaintiff is self-represented, pro se pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007). However, even a pro se litigant's complaint must be dismissed if it does not allege a "plausible claim for relief." *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and brackets omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Summary judgment is granted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to ... the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Against this standard, the court recognizes that pro se litigants' pleadings should be construed to allow them to fully develop a potentially meritorious case. *See Erickson*, 551 U.S. at 94. However, a court cannot assume the existence of a genuine issue of material fact where none exists. *See* Fed.R.Civ.P. 56(c).

## DISCUSSION

To proceed under 42 U.S.C. § 1983, a plaintiff must allege a violation of a federal constitutional right or a right secured by federal law. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). The plaintiff's claims of inadequate medical care, unconstitutional conditions of confinement, and excessive force are examined in light of the Eighth Amendment, which prohibits "cruel and unusual punishments," such as those involving the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).

## A. Eighth Amendment Claims

### 1. Medical and Mental Health Claims

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the wanton infliction of pain," regardless whether the indifference is "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. 97, 104–05 (1976). The Court cautioned that not every allegation of inadequate medical treatment states a claim under the Eighth Amendment. *Id.* at 105. Neither an "inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" amounts to deliberate indifference. *Id.* at 105–06.

To establish an Eighth Amendment claim a plaintiff must prove: "(1) that the deprivation of a basic human need was *objectively* sufficiently serious; and (2) that *subjectively* the officials acted with a sufficiently culpable state of mind." *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013) (emphasis in original). The court must "consider prison officials' culpable mental state because 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment'" *King v. U.S.,* 536 Fed. Appx. 358, 360 (4th Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "To constitute deliberate indifference to a serious medical need, 'the treatment a prisoner receives must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

fundamental fairness.'" *King* at 361 (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), overruled in part on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994)). A prison official is "deliberately indifferent to an inmate's serious medical needs only when he...subjectively 'knows of and disregards an excessive risk to inmate health or safety.' " *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

Importantly, because "the essential test is one of medical necessity and not simply that which may be considered merely desirable," inmates do not have a constitutional right to the treatment of their choice. *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Thus, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970)). No exceptional circumstances are alleged here.

### a. April Shipley, William Bilak, and Vicki Ward

The plaintiff alleges the Medical Defendants refused him medication for asthma and gastritis in retaliation for assaulting Officer Self. Compl. ¶¶ 39, 41. He asserts that he expressed his medical concerns to Defendants during the time he was on staff alert but they smiled and walked away. Compl. ¶ 68. Additionally, he avers that he has pleaded for medical care because he is spitting up blood, has bloody stools, severe stomach pain caused by gastritis, and pain upon

defecation, but has received no treatment.  Compl. ¶¶ 39, 41.  It is troubling that neither the State or Medical Defendants address his claims of bloody stools, spitting up blood, pain upon defecation, and severe gastritis, and the medical records fail to indicate whether Jones was provided evaluation or medical care for these potentially serious conditions.

Shipley, Bilak, and Ward deny they were deliberately indifferent to the plaintiff's serious medical needs. They assert the plaintiff did not file any sick leave requests in August of 2016.[9] They do not, however, support this assertion with a supporting declaration. Further, they do not directly refute the plaintiff's claim that when he asked for his inhaler or medication for stomach pain, they acknowledged him by smiling and walked away.  It is concerning that the medical records do not elucidate whether the plaintiff was regularly provided his prescribed medications while on staff alert.  The court was able to find only two references to the plaintiff's receipt or refusal of medication while on staff alert.  State Def. Ex. 23, Record of Segregation Confinement at 2 (recording that on August 12, 2016, he refused "tram" [10] and on August 17, 2016, the plaintiff received "med."). Further, these records fail to address the plaintiff's claim that medication changes of an uncertain date caused him psychological and physical pain.

Viewing the plaintiff's allegations in the light most favorable to him, as this court must, a failure to respond to an inmate's entreaties for his prescribed medication for almost two weeks leaves in dispute a genuine issue of material fact whether Shipley, Bilak, and Ward  acted with deliberate indifference to his serious medical needs. Accordingly, Shipley, Bilak, and Ward's Motion for Summary Judgment (ECF No. 34) will be denied.

---

[9]  The Medical Defendants filed copies of the plaintiff's sick leave requests received September 7, 2016; September 30, 2016; October 21, 2016; November 12, 2016; and December 13, 2016.  Med. Def. Ex. 1 at 3-7, ECF No. 34-2. The records of the plaintiff's medical visits from October through December 2016 do not address whether the plaintiff had access to his prescribed medication during his placement on staff alert in August of 2016.  Med. Def. Ex. 1 ECF No. 34-2.

[10]  This note likely refers to the plaintiff's refusal of Tramadol.

### b. Jeanette Simmons

Jeanette Simmons, by her counsel, seeks dismissal of the claims against her pursuant to Fed.R.Civ.P. 12(b)(6). ECF No. 47. Simmons, who is a nurse, maintains there is no reference to her in the body of the complaint. Instead, the only reference made to Simmons is in a separate letter from another inmate that states that Simmons is a staff member in the psychology department (in fact she is a nurse); and that the plaintiff had discussed his mental health with Simmons, including the fact that the plaintiff refused to eat. Simmons Mem. at 3-4, ECF No. 47; *see also* Inmate Letter at 2, ECF No. 1. Because the complaint contains no claims against Simmons, her Motion to Dismiss will be granted.

### c. Vincent Siracusano, M.D.

The plaintiff alleges Dr. Siracusano, a psychiatrist, exhibited deliberate indifference to "mental health needs, violate [sic] the plaintiff Sincere Allah rights and constituted crual [sic] unusual punishment under the Eighth Amendment to the United States constitution." Compl. ¶ 105. Dr. Siracusano, by his attorney, accurately observes there is no other mention of him in the complaint. Mot. To Dismiss, ECF No. 36. Of importance, the plaintiff alleges no facts against Siracusano to substantiate his conclusory assertion of a constitutional violation. The plaintiff claims in later correspondence that Siracusano was negligent for stopping his medications,[11] although he does not state what medications Siracusano stopped or when. Plaintiff Correspondence, ECF No. 10. The plaintiff provides insufficient facts, even when accepted as true, to state a plausible claim. Further, negligence, by itself, is insufficient to support an Eighth Amendment claim. For these reasons, Siracusano's Motion to Dismiss will be granted.

---

[11] The plaintiff's medical record dated August 4, 2016, shows that he was prescribed seven different medications at the time. State Def. Ex. 3 at 2, ECF No. 38-5 at 2.

#### d. State Defendants

##### i. Bishop, Bohrer, Sawyers, Stotler, Wilt, and Oates

The plaintiff asserts that when he asked Lt. Oates for his stomach medicine and inhalers, Oates told the plaintiff that he was not allowed to have anything on staff alert, "no water, no mattress, no thing [sic] per the Chief of Security W. Boherer, Warden Frank Bishop, Thomas Sawyers, Ronald Stotler, and Lieutenant Bradley Wilt." Compl. ¶ 66. Oates, however, does not address or refute this claim directly, though he states he has "never denied or in any way intervened" with the plaintiff's medical care or medications. Oates Decl., ECF No. 38-8.

The State Defendants have filed NBCI Directive 110.006 which outlines institutional disciplinary segregation policy. It provides that inmates in segregation have the same access to health as the general prison population.[12] State Def. Ex. 22, NBCI Directive 110.0006.1. Further, Boherer, Bishop, Sawyers, Stotler, and Wilt have executed declarations denying hindering or delaying the plaintiff's medical or mental health care. State Def. Ex. 1, Bishop Decl., ECF No. 38-3; State Def. Ex. 4, Bohrer Decl., ECF No. 38-6; State Def. Ex. 9, Sawyers Decl., ECF No. 38-12; State Def. Ex. 5, Stotler Decl., ECF No. 38-7; State Def. Ex. 25, Wilt Decl., ECF No. 38-27. Bishop explains in his declaration that medical treatment and medical services are provided to NBCI inmates by a private medical contractor. State Def. Ex. 1, Bishop Decl ¶¶ 4-5.

---

[12] Section 110.006.05 A.(10) reads:

> Segregation inmates will have the same access to health care as the general population, which includes medication distribution.
>
>> a. Medications in containers that can be effectively used as a weapon dispensing device shall not be permitted in segregation housing. The medical contractor shall provide alternate products, packaging, or delivery methods so as to avoid the issuance of these types of containers. Should a particular medication only be available in such a container, the medical contractor shall make arrangements to store said medication and administer or distribute as needed. Exceptions may be smaller similar containers.

The record before this court does not indicate if the plaintiff's medications were in containers requiring alternative arrangements or otherwise under this exception.

Warden Bishop attests that he is not personally involved with the medical or mental health care provided to the plaintiff or to any other inmate, and has no authority to order professional medical and mental health staff to make specific decisions. Diagnoses of mental health issues are made by professional medical staff. Bishop, who is not licensed to practice medicine, generally defers to the expertise of medical staff in matters involving inmate medical care. Bishop denies hindering or delaying any medical care provided to the plaintiff and has no knowledge of any subordinate interfering with or delaying the plaintiff's mental or mental health care. *Id.* ¶¶ 4-6. Similarly, Bohrer states he has not been involved in, interfered with, or delayed the provision of medical or mental health care to the plaintiff, and has no knowledge of staff under his authority doing so. State Def. Ex. 4, Bohrer Decl. ¶¶ 7-8. Stotler states he has no knowledge of anyone under his supervision denying the plaintiff access to medical care or medications. State Def. Ex. 5, Stotler Decl. ¶ 5. Sawyer denies preventing the plaintiff's access to medical or mental health treatment. State Def. Ex. 9, Sawyers Decl. ¶ 10. Wilt declares that at no time did he deny, or in any way interfere with the plaintiff's access to medical care or medication. State Def. Ex. 25, Wilt Decl. ¶ 5.

The court recognizes that Lt. Oates, Chief of Security W. Boherer, Warden Frank Bishop, Thomas Sawyers, Ronald Stotler, and Lieutenant Bradley Wilt, are not medical providers. However, the plaintiff's claim that Oates said he was to receive nothing while on staff alert per Bishop, Bohrer, Stotler, Wilt, and Sawyer's orders is unrefuted. Viewing the plaintiff's claim in the light most favorable to him suggests these defendants may have in fact been personally involved in depriving him medication or otherwise culpable under principles of supervisory liability. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994) (Supervisory liability may attach under § 1983 if a the plaintiff establishes: "(1) that the supervisor had actual or constructive

18

knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.").

The parties offer differing versions of the events in their affidavits or pleadings sworn under penalty of perjury, and the differences involve genuine issues of material fact, so that summary judgment is not appropriate. Accordingly, summary judgment will be denied as to the plaintiff's claims that Lt. Oates, Chief of Security W. Boherer, Warden Frank Bishop, Thomas Sawyers, Ronald Stotler, and Lieutenant Bradley Wilt denied him medication during the time he was on staff alert.

### ii. Bielanski, Wilt, Spier, Marchinke, Murry, Self, Murray, Mallow,[13] Gilpin, Michael, Weimer, Sellers, Oates, Werner

The plaintiff faults Officer Murray for denying him an emergency institutional pass to see a dentist for his "TMJ" (temporomandibular joint disorder)[14] on August 3, 2016. Compl. ¶¶ 44-45. However, he does not assert that Murray was aware of his dental pain or need for dental treatment. Murray denies hindering the plaintiff's access to medical care. State Def. Ex. 13, Murray Decl. ¶ 5, ECF No 38-15. The facts alleged are insufficient to state a plausible claim for denial of dental care. Accordingly the dental claim against Officer Murray will be dismissed.

---

[13]   Plaintiff refers to Officer Warren Mallow as Mallow and as Warren. The officer's name is Warren Mallow. ECF No. 38-15
[14]   TMJ refers to a set of joint and muscle disorders that affect the chewing muscles and joints that connect the lower jaw to the skull. *See* "TMJ disorders: MedlinePlus Medical Encyclopedia," U.S. National Library of Medicine, available at https://medlineplus.gov/ency/article/001227.htm (last viewed Mar. 22, 2018).

The plaintiff also claims that when he was on staff alert, he pleaded with Werner, Bielkanski, Wilt, Spier, Marchinke, Murray, Self, Mallow, Gilpin, Michael, Weimer, Crowe,[15] and Sellers for his inhaler and stomach medication, but they denied his requests because he had assaulted an officer. Compl. ¶ 69. Defendants uniformly attest they have never denied, or in any way interfered with, the plaintiff's access to medical care or receipt of medication. *See* State Defs Exs. 7-8, 10, 12, 14-17, 26, Speir, Werner, Bielanski, Marchinke, Self, Mallow, Gilpin, Weimer, Sellers Decls. Murray and Self also attest that they have never denied the plaintiff access to medical care. Murray and Wilt Decl., State Def. Ex. 13 and 25.

Jones's verified complaint is the functional equivalent of an affidavit and precludes summary judgment if it conflicts with the defendants' affidavits on genuine issues of material fact. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purpose, when the allegations contained therein are based on personal knowledge.")). Where, as here, the parties offer differing versions of events in affidavits or pleadings sworn under the penalty of perjury, and the differences involve genuine issues of material fact, summary judgment is precluded. Therefore, summary judgment will be denied regarding the plaintiff's claim that he was denied medication by Defendants Bielanski, Spier, Murray, Marchinke, Self, Mallow, Gilpin, Weimer, Sellers, and Werner.[16]

---

[15] Officer Crowe was not added by the clerk as a defendant to this case, nor has he or she responded in any way to this suit, nor has counsel for State Defendants indicated that they will represent him or her. The court will order that he be added to the docket and that counsel provide clarification on his representation and service. Nurses Amy, Ciara, Kelly, and Shawna were added to the docket, but no counsel has accepted service for them. The court will request clarification as to service and representation for these defendants as well.

[16] A motion for summary judgment was not filed on behalf of Officer Crowe or Nurses Amy, Ciara, Shawna, and Kelly. The claims will proceed against them as well at this time.

### iii. Beitzel and Wilson

The plaintiff claims Beitzel and Wilson were deliberately indifferent to his mental health needs. Compl. ¶¶ 103, 104. He claims without providing facts in support that Beitzel "lies for the correctional officers," refuses his requests to see a psychologist, and then records him as refusing to meet with her. *Id* ¶41. The plaintiff maintains Officer Oates told him that Beitzel said he was faking suicide to gain attention. *Id*. ¶ 65. Further, on August 5, 2016, Sgt. Schroyer[17] informed him that Laura Wilson had been called, but refused to see him because he was faking. *Id.* ¶ 58.

Beitzel states in her declaration that the plaintiff has not been denied access to mental health care at NBCI. State Def. Ex. 2, Beitzel Decl. ¶ 8, ECF No. 38-4. Jones' medical records show that his claims of entertaining suicide were evaluated, and he was seen by medical and mental health providers. *See* Status Report Ex. 2, Pertinent Med. Records at 3-6, 8-10. On August 9, 2016, Beitzel reported this was the second time the plaintiff had self-inflicted superficial cuts since August 5, 2016, when he scratched himself with a staple, and commented that "[b]oth instances were not reported to be suicidal in nature, but instead as a means of acting out and getting attention." State Def. Ex. 3, Relevant Med. Records at 10. Beitzel noted that custody staff had informed her that the plaintiff had been acting out, but that he was presently quiet and compliant. Beitzel opined that the plaintiff's gestures are behaviorally driven. *Id.*

There is no distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *Bowring*, 551 F.2d at 47. A prisoner is entitled to such treatment if a

> physician or other health care provider, exercising ordinary skill and care at the
> time of the observation, concludes with reasonable medical certainty (1) that the

---

[17] Plaintiff names Schroyer as a defendant but does not allege any claims against him. Accordingly, Schroyer will be dismissed from this case.

prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.

*Id.* The right to treatment is based upon the essential test of medical necessity and not upon that care that is considered merely desirable. *Id*. at 48. While the plaintiff may take issue with Beitzel's assessment of his mental health concerns, his disagreement with his diagnosis and treatment does not demonstrate deliberate indifference necessary to support an Eighth Amendment claim. Accordingly, summary judgment will be entered in favor of Beitzel.

In a declaration dated September 9, 2016, sent with a status report ordered in this case, Monica A. Wilson[18] attests she had met with the plaintiff several times individually and in a group over the six months preceding the declaration. Additionally, psychology staff members met with the plaintiff five times during the same period. Status Report Ex. 1, Wilson Decl. ¶ 3. The plaintiff was seen by mental health providers on June 29, 2016; July 25, 2016; and August 8, 2016 for concerns he was entertaining thoughts of suicide. Each time the plaintiff denied being suicidal. *Id.* When seen on June 29 and August 8, he said that he wanted attention and to get back at staff. *Id.* Wilson's declaration evidences that she met with the plaintiff consistently. Even if it is true that Laura Wilson refused on one occasion to meet with him,[19] her refusal does not amount to a claim of constitutional moment. Accordingly, summary judgment will be entered in Laura Wilson's favor.

---

[18] It is unclear from the record and the defendants' motions and memoranda whether Monica A. Wilson is the same individual whom the plaintiff refers to as Laura Wilson. Monica A. Wilson attests that she is a social worker, but the plaintiff refers to Laura Wilson as a licensed professional counselor. Regardless, the evidence shows that sufficient mental health treatment was provided to support a motion for summary judgment regarding the specific instance in which Laura Wilson may have declined to meet with him. If, however, Laura Wilson is a different individual from Monica Wilson, and the plaintiff can establish more than a single meeting denial, he may amend his complaint accordingly to reflect that evidence.

[19] Of note, the plaintiff was seen by two other medical providers that day, neither of whom mentioned that he expressed suicidal intentions or behavior. State Defs. Ex. 3, Relevant Med. Records at 5-6.

## 2. Excessive Force

Where "force was applied in a good-faith effort to maintain or restore discipline," and not to "maliciously and sadistically to cause harm," the force cannot be considered excessive as a matter of law. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In determining whether the force in this context was excessive, the court considers the correctional need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Id.* at 7. The absence of significant injury alone is not dispositive, and is rather just one factor in the excessive force determination. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010).

The plaintiff alleges that on August 8, 2016, Lt. Wilt grabbed him by the neck and forcefully pushed his head toward the floor, stating you are "not going to spit on me." Compl. ¶ 62. The plaintiff avers Wilt accused him of spitting to justify his actions. *Id.* Officer Marchinke and an unidentified officer bent his arms until his shoulder popped. All the while, the plaintiff was in handcuffs. *Id.* During the August 5, 2016 incident, the plaintiff claims that Wilt put a spit mask on him even though he could not breathe and told another officer to put the plaintiff's property in the office. *Id.* ¶ 55. Nurse Amy Booth was present in case a cell extraction had become necessary. State Def. Ex. 5, Relevant Med. Records at 5. Booth reports that the plaintiff, who was handcuffed from behind his back, showed no distress, but complained "I can't breath [sic], I need my inhaler." *Id.* Booth noted he could complete a sentence without shortness of breast or audible wheezing. *Id.* She noted the plaintiff's coloring was normal and he walked out of the medical department when the evaluation was completed. *Id.* Booth advised him to use his inhaler when he returned to his cell if necessary. *Id.*

The plaintiff alleges that on August 8, 2016, Wilt grabbed him while the plaintiff was handcuffed, forced his head toward the floor, placed his arms above his head, and later stuck his thumb and finger in the plaintiff's jaw, causing him pain. The plaintiff avers that Wilt was aware that he suffered jaw problems. *Id.* ¶ 63.

Marchinke and Wilt deny assaulting the plaintiff. State Def. Ex. 12, Marchinke Decl. ¶ 5, ECF 38-14; State Def. Ex. 25, Wilt Decl. ¶ 4, ECF No. 38-27. Further, Wilt denies knowledge of anyone who was under his supervision harassing or threatening the plaintiff. State Def. Ex. 25, Wilt Decl. ¶ 4When viewed in the light most favorable to the plaintiff, Mr. Allah claims that he was assaulted while handcuffed without provocation, as he did not spit at Wilt, and that Wilt knowingly caused him pain by pressing his fingers into the plaintiff's jaw and Marchinke bent his arms until his shoulders popped. Marchinke and Wilt generally deny the allegations. Because the parties provide conflicting affidavits, and credibility cannot be judged on the pleadings, summary judgment is precluded. Accordingly, summary judgment will be denied as to the plaintiff's excessive force claims against Wilt and Marchinke.

### 3. Harassment

The plaintiff also claims that Wilt "harassed him" but provides no supporting facts beyond simple instructions to turn around while he was cuffed. *Id.* ¶ 51. Verbal abuse of inmates, while disturbing and not condoned by any court, does not rise to a constitutional deprivation. *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *see also Carter v. Morris*, 164 F.3d 215, 219, n. 3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]ot all undesirable behavior by state actors is unconstitutional"). Accordingly, this claim will be dismissed.

### 4. Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). But, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that 'the deprivation of a basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (citation omitted).

To establish a sufficiently culpable state of mind, there must be evidence that a known, excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 298-99. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta*, 330 F.3d at 634. Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of "a serious or significant physical or emotional injury resulting from the challenged conditions."

*See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003) (quoting *De'Lonta*, 330 F.3d at 634).

The plaintiff claims that he was denied running water in his cell, a mattress, toilet paper, and his personal property during the period he was on staff alert. He also claims that the meal loaf he received is unconstitutional. He also objects to the number of showers and out of cell recreation he has received.

Lt. Sawyers denies refusing the plaintiff a shower or recreation unless his behavior at the time created a security concern. State Def. Ex. 9, Sawyers Decl. ¶12. Sawyers states that the plaintiff received bedding and hygiene items compatible with his security status. *Id.* ¶¶13-14; *see also* State Def. Ex. 24, NBCI.ID.110.006.1, Disciplinary Segregation Policy and Guidelines. Notably, he does not unequivocally state which items the plaintiff received or was denied.

The plaintiff's placement on staff alert was a direct consequence of his flooding the tier and spraying an officer with urine. Such behavior threatens institutional security and the safety of staff and other inmates. Yet the record does not show whether the conditions imposed while the plaintiff was on staff alert were extreme or if staff acted with a sufficiently culpable state of mind to support a conditions of confinement claim.[20] Viewing the light in the evidence most favorable to the plaintiff, there is an open question of fact as to whether he was denied a mattress, as to the necessity for the alleged deprivation of toilet paper, running water, and a mattress, and as to the extent of the injuries he may have incurred as a result of the alleged deprivations.

"[I]nmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates

---

[20] The court notes that the record shows the plaintiff refused a mattress on August 5, 2016, the first day he was assigned to staff alert status. State Def. Ex. 21, Daily Events Log, Aug. 5, 2016 at 1.

who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir.1985) (citations omitted). This court has held that placement on the special management meal plan ("food loaf") does not constitute cruel and unusual punishment and does not, in the absence of showing any adverse health effects, constitute an atypical and significant hardship so as to deprive an inmate of a due process liberty interest. *See, e.g., Chase v. Warden*, 2009 WL 2426247, *2-3 (D. Md. Aug. 5, 2009); *Doucett v. Warden, Maryland Corr. Adjustment Ctr.*, 2001 WL 604187, *1 (D. Md. May 31, 2001); *see also Cunningham v. Jones,* 567 F.2d 653, 656 (6th Cir. 1977) (holding bread and water diet is a violation of the Eighth Amendment); *Adams v. Kinchella,* 743 F. Supp. 1385, 1390–92 (E.D.Wash.1990) (holding nutra-loaf diet for a limited period of time is not a violation of the Eighth Amendment).

The plaintiff opines that "food loaf is all your food, milk, and juice mix [sic] together and bake [sic] into a loaf of bread which is something a dog nor pig would eat." Pl. Opp. ¶32, ECF 49. While prison meals in general and special management meals may not be appetizing, absent absence of any adverse health effects they are not a significant and atypical hardship. The plaintiff may not like the food loaf, but that does not mean it was constitutionally inadequate.

For these reasons, the court concludes that, when viewing the facts in the light most favorable to the plaintiff, there is a genuine dispute as to the material facts surrounding the plaintiff's conditions of confinement while he was on staff alert. The State Defendants are entitled to summary judgment regarding the meal loaf, but summary judgment will be denied as to the claims regarding deprivation of showers, out of cell recreation, toilet paper, running water, and a mattress.

## B. Retaliation

To establish a prima facie case of retaliation, a plaintiff must allege that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the conduct of defendants. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). In the prison context, a plaintiff must ultimately establish that the prison authorities' allegedly retaliatory action did not advance legitimate goals of the correctional institution or was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id*. at 532.

The plaintiff alleges he was denied medication, denied medical treatment for spitting up blood, severe headaches and dizziness, bloody stools and severe stomach pains caused by gastritis, subjected to use of excessive force, and exposed to unconstitutional conditions of confinement for assaulting Officer Self with urine. Compl. ¶ 39; Pl. Decl. at 2. He claims he is being denied his medication for blood pressure and that he needs to be evaluated for cancer and diabetes, although he does not identify the parties who are denying him blood pressure medication and screening for cancer and diabetes.

Neither the State nor the Medical Defendants specifically address the plaintiff's retaliation claim. Because other claims are going forward, summary judgment will be denied as to the plaintiff's claims he was denied medical care, was subjected to unsonstitutional conditions of confinement, and was the victim of excessive force in retaliation for his assault on an officer.

## C. Equal Protection

The Equal Protection Clause of the United States Constitution protects citizens from intentional unequal treatment by state actors. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473

U.S. 432, 439 (1985). To sustain an equal protection challenge, a plaintiff must demonstrate that "he has been treated differently from others with whom he is similarly situated." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001); *see also Washington v. Davis*, 426 U.S. 229, 239–42 (1976); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Bald and conclusory assertions of discriminatory animus are insufficient to state an Equal Protection claim. *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985).

Liberally construing his verified complaint, the plaintiff has made a sufficient showing. The plaintiff asserts that two unnamed white inmates also threw urine at officers and were not placed in a suicide smock or deprived of water, a mattress, or regular meals. One was placed on staff alert. Although the plaintiff does not identify the white inmates by name, he does articulate that two individuals in a different racial group allegedly behaved in the same manner but faced different consequences. At this early stage in the suit, without opportunity for discovery, he cannot be expected to have more specific details regarding the other two inmates. Assuming the plaintiff's assertions to be true, these allegations are sufficient to establish an equal protection claim, and therefore summary judgment will be denied regarding this claim. The plaintiff's conclusory allegations of disparate treatment regarding the food loaf, however, are insufficient for that claim to survive summary judgment. He posits that he was the only inmate on the segregation tier given meal loaf, but he does not identify the race or other protected class of these inmates.

### D. Mail Tampering

Next, the plaintiff generally claims that correctional officers refuse to accept his Inmate Grievance Office ("IGO") forms for mailing and that they tamper with his mail.[21] Of note, he does not identify the nature of the mail, the individuals involved, particularize how they have

---

[21] The State Defendants ignore this claim in their Response. ECF No. 38.

"tampered" with his mail, or identify any actual harm. To establish a cause of action for mail tampering, the plaintiff must allege an actual injury such as interference with communications with counsel or a court, or loss of an ability to litigate a claim. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977) (recognizing that prisoners have a constitutional right of access to the courts); *Carter v. Hutto,* 781 F.2d 1028, 1031-32 (4th Cir. 1986) (a cause of action for destruction of legal mail requires allegations of the important or irreplaceable nature of the mail in question and detriment suffered by the ensuing deprivation of meaningful access to the courts); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975) (confiscating an inmate's legal materials is an unreasonable interference with access to courts); *Chase v. O'Malley,* 466 Fed.Appx. 185, 187 (4th Cir. 2012) (inmate must allege "actual injury or specific harm" to "establish a claim" for destruction of legal mail). Absent the necessary factual basis for a plausible mail-tampering claim, this claim will be dismissed.

Regarding the plaintiff's IGO claim, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr*., 855 F.3d 533, 541 (4th Cir. 2017) (discussing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994)). The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), makes the issue less clear in regard to a claim of denial of access to the courts arising from the denial of access to a prison grievance process because the statute mandates exhaustion of administrative remedies before a federal claim may be filed by a prisoner. The State Defendants do not raise administrative exhaustion as an affirmative defense, however, so no actual harm is apparent. In the absence of an allegation of injury, the court concludes this claim must be dismissed.

## INJUNCTIVE RELIEF

The plaintiff seeks preliminary and permanent injunctions to stop correctional officers from denying him showers,[22] recreation, haircuts, the opportunity to launder his clothing, hygiene bags, and institutional passes. Compl. ¶ 108. To the extent he is seeking a temporary restraining order or permanent injunctive relief, he is requesting an extraordinary remedy that can be granted only if there is a "clear showing" that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20-23 (2008); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). In the prison context, courts should grant preliminary injunctive relief only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

The plaintiff has not submitted proof of irreparable harm if he is denied showers and out of cell recreation for a limited period of time, haircuts, passes, or laundry privileges, and, without such proof, the court cannot conclude that he will be irreparably harmed. Nor does he present exceptional circumstances to tip the balance of the equities in his favor or that an injunction will serve the public interest. The plaintiff acknowledges that he assaulted an officer, and the restrictions he faced on disciplinary segregation were duly imposed after an adjustment hearing. Substantial deference is to be given to the judgment of prison administrators. *See Overton v. Bazzetta,* 539 U.S. 126, 132 (2003). Accordingly, the plaintiff's request for preliminary and permanent injunctive relief regarding the above listed items will be denied at this time.

---

[22] The plaintiff's segregation records for August 2016 appear contradictory: one record shows that the plaintiff had no showers or cell activity for the month of August 2016, while a second record capturing the same time period shows he was out of his cell once and showered twice, but otherwise refused or had no cell activity the rest of the month. State Def. Ex. 23, Record of Segregation Confinement at 1-3, 5. The record shows that on August 17, 2016, plaintiff received "med." *Id.* at 2.

The court is concerned, however, by the possibility that the plaintiff is being denied needed medication. His claims regarding denial of treatment have survived a motion for summary judgment, although they have not been plead with such specificity that he has made a clear showing of likelihood to succeed on the merits. However, the potential for irreparable harm to his mental and physical health from being denied such medications could be very high. It is certainly in the public interest that incarcerated individuals receive necessary medical care. *See Estelle,* 429 U.S. 97 at 104 ("deliberate indifference to serious medical needs of prisoners constitutes the wanton infliction of pain" in violation of the Eighth Amendment). Although the court finds that the plaintiff has not met the extraordinary burden for granting a preliminary injunction on this issue, the defendants should still be mindful of its constitutional obligations to provide the plaintiff with all necessary medications and treatment. Preliminary injunctive relief will be denied, but without prejudice to seeking permanent injunctive relief, if warranted, at the conclusion of the case.

## QUALIFIED IMMUNITY

The State Defendants assert they are entitled to summary judgment on all claims based on qualified immunity. Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Resolving whether an official is entitled to qualified immunity must be determined "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

To determine if a public official is entitled to the protections afforded by qualified immunity, two inquiries must be addressed: "(1) whether the plaintiff has established the

violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 898 (4th Cir.), *cert. denied sub nom. Vill. of Pinehurst, N.C. v. Estate of Armstrong*, 137 S. Ct. 61, 196 L. Ed. 2d 32 (2016). "The court may address these two questions in the order that will best facilitate the fair and efficient disposition of each case.'" *Id.* (internal quotation marks and ellipses omitted.)

The State Defendants aver that they have not violated any clearly established right of which a reasonable public official should have known. On the surviving claims, and under the factual circumstances set forth above in the light most favorable to the plaintiff, the violations would have been clear. Therefore, the court finds that the remaining defendants are not entitled to qualified immunity on the current record.

## MOTION FOR VOLUNTARY DISMISSAL

The plaintiff recently filed a motion for voluntary dismissal without prejudice because he "does not have adequate access to the Law-Library [sic]" and he would be unable to obtain necessary documents to pursue his claims because they are confidential. Pl.'s Mot. Dismiss at 1. After the opposing parties have served an answer or a motion for summary judgment, a plaintiff may only dismiss an action with a court order or a stipulation of dismissal signed by all parties who have appeared. Fed. R. Civ. P. 41(a)(1). No stipulation of dismissal has been filed, so dismissal requires a court order. The court's appointment of counsel to represent the plaintiff and the granting of discovery in this suit should address the plaintiff's concerns regarding legal research and access to necessary documents to continue to pursue his claim. Therefore, the motion for voluntary dismissal will be denied without prejudice. If the plaintiff no longer wishes to pursue his claim, he may re-file a motion to dismiss.

## CONCLUSION

For these reasons, the court will, by separate order, grant the Motions to Dismiss (ECF Nos. 36, 47) filed by Vincent Siracusano and Jeanette Simmons. Defendants Bilak, Shipley, and Ward's Motion for Summary Judgment (ECF No. 34) will be denied. The plaintiff's request for a Temporary Restraining or Permanent Injunctive Relief (as contained in the complaint ECF No. 4 at 30 ¶ 4) also will be denied.

The State Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 38) will be granted in part and denied in part. Summary judgment will be granted in favor of defendants Beitzel and Wilson, with the exception noted in footnote 21. Summary judgment will be granted in favor of all State Defendants as to the plaintiff's harassment, mail tampering, and interference with Inmate Grievance Office (IGO) filings. Summary judgment will be granted in favor of Officer Murray as to the plaintiff's claim he was denied a pass to a dental appointment. Defendants Bishop, Bohrer, Sawyers, Stotler, Wilt, Oates, Bielanski, Spier, Murray, Marchinke, Self, Mallow, Gilpin, Michael, Weimer, Sellers, and Werner will be denied summary judgment as to the plaintiff's claims that he was denied medication in retaliation for assaulting an officer while on staff alert in August 2016. Summary judgment regarding the plaintiff's conditions of confinement and equal protection claims during the same time period also will be denied, except as to the meal loaf.

The court will order that the plaintiff be appointed counsel to represent him in this matter. The plaintiff's motion to dismiss will be denied without prejudice.

A separate order follows.

\_\_\_\_3/28/2018_____          _____/s/_____
Date                                                                    Catherine C. Blake
                                                                              United States District Judge